UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Lance Wickner,                                             Civil No. 12-CV-1452 (DWF/FLN)

          Plaintiff,

v.                                                          **REPORT AND RECOMMENDATION**

Robert Bender, et al.,

          Defendants.

_____

Lance Wickner, *pro se*, Plaintiff.
Anthony Noss for Defendants.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on Defendants Robert Bender ("Bender"), Thomas Cherro ("Cherro"), Jeff Laine ("Laine"), Kevin Dreher ("Dreher"), Jason Furey ("Furey"), and Tyler Rosen's ("Rosen") (collectively "Defendants") motion to dismiss Plaintiff Lance Wickner's ("Wickner") Amended Complaint (ECF No. 40). The motion was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, the Court recommends that Defendants' motion to dismiss be **DENIED**.

**I. FINDINGS OF FACT**

For purposes of Defendants' motion to dismiss, this Court accepts the factual allegations contained in the Amended Complaint (ECF No. 39) as true, and draws all reasonable inferences in Wickner's favor. *See Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

Wickner is a civilly committed person who resides at the Minnesota Sex Offender Program

("MSOP") facility in Moose Lake, Minnesota. ECF No. 39 at 1.[1] Wickner alleges that on April 26, 2012, he was using a unit computer to fill out an order for photographs. *Id.* at 2. Wickner acknowledges that he was on restricted status 3, which permitted him only to use the computer for legal work. *Id.* Accordingly, Wickner alleges he was told by the security counselor that he could use the computer only for legal work. *Id.* Wickner alleges that he told the security counselor that he did not know that he could use the computer only for computer work, and started doing legal work on the computer. *Id.* Wickner claims that the security counselor first told him it was fine, but then decided to punish him for his personal use. *Id.* Wickner claims that this was in violation of MSOP policy which requires that the security counselor provide him with a behavioral expectations report. *Id.* Wickner refused to get off the computer, at which point, he alleges that the security counselor called an "Incident Command System," whereby Defendants Bender, Cherro, and Laine responded. *Id.*

According to Wickner, Defendants Bender, Cherro and Laine used excessive force in getting him off the computer. *Id.* at 3. Wickner alleges that Defendant Lane threatened to hit him with a flashlight, so he put on a pair of gloves, stepped back, and told Defendant Laine that he would fight him if he had to. *Id.* Believing that he would be assaulted by Defendants, Wickner alleges that he placed a cart between himself and Defendants Bender, Cherro and Laine. *Id.* Wickner claims that, without warning, Defendants Bender, Cherro, and Laine sprayed excessive amounts of chemical irritants in his face. *Id.* This caused a burning sensation on Wickner's face that lasted approximately four to five hours. *Id.* According to Wickner, the Defendants continued to spray him with the chemical irritants as they chased him around the unit. *Id.* He attempted to return to his cell, but

---

[1] A more complete factual background of this case can be found in the Court's previous Order. *See* Order, ECF No. 34.

Defendant Bender closed his cell door and continued to spray Wickner with the chemical irritant. Wickner alleges that he was then tackled to the ground, and choked by Defendant Laine until he could not breath; causing him to suffer ringing in his ear for approximately seven hours, and headaches for the next four months. *Id.* Wickner claims that he did not struggle but lay unresisting. *Id.* While being choked by Defendant Laine, Defendant Bender punched him in the hip, aggravating an old injury. *Id.* Wickner claims that Defendants Bender, Cherro, and Lane's conduct violated MSOP's Use of Force and Restraint Policy 301.080 which required them to warn Wickner before any use of a chemical irritants, and required they get authorization from the Security Program Manager or Officer before using the chemical irritant, unless delay would result in bodily harm, loss of control in an area, or if the safety of staff is in jeopardy. *Id.*

Following that, Wickner was brought up to the High Security Area for clean up. *Id.* While there, he alleges that Defendants Kevin Dreher and Jason Furey failed to properly decontaminate him. *Id.* Wickner alleges that they placed him under the shower head for approximately ten seconds, and then placed him in a cell with nothing to clean off the irritants. *Id.* According to Wickner, Defendants Dreher and Furey were required to clean any affected area as soon as possible with an approved cleaning agent. *Id.* At approximately 12:40 p.m., Wickner was assessed by Eileen Christie, a registered nurse at the facility and received pain medication. *Id.* At 3:30pm, Wickner claims that he informed Defendant Tyler Rosen that the chemical irritant was still burning him, that he wanted to get decontaminated again, and asked to be put on the list to see the Hospital Review Board. *Id.* Half an hour later, Wickner talked to Defendant Rosen about taking a shower to wash the chemical irritants off. *Id.* According to Wickner, Defendant Rosen told him that he would need to wait after the first 24 hours of placement, and that "he would just have to bear it out until the burning

3

sensations went away." *Id.*

On June 9, 2012, Wickner filed a civil rights action against Defendants Bender, Cherro, and Laine alleging damages under 42 U.S.C. § 1983. ECF No. 1. On October 12, 2017, Wickner amended his Complaint, and added factual allegations against Defendants Bender, Cherro, and Laine, as well as new allegations against Defendants Dreher, Furey, and Rosen. *See generally* ECF No. 39. In his Amended Complaint Wickner claims that Defendants Bender, Cherro, and Laine violated his Fourteenth Amendment rights by using unnecessary and excessive force. *Id.* Wickner also claims that Defendants Dreher, Furey, and Rosen violated his Fourteenth Amendment rights by deliberate indifference to a serious medical need when they failed to properly decontaminate him. *Id.* Wickner is suing all of the Defendants in their individual capacity, and seeks ten thousand dollars in compensatory damages, and one hundred thousand dollars in punitive damages. *Id.* at 5.

## II. STANDARD OF REVIEW

For the purpose of a motion to dismiss, facts in the complaint are assumed to be true. *See In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 738 (8th Cir. 2002). In analyzing the adequacy of a complaint under Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from those facts. *See Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002). For the purpose of a motion to dismiss, facts in the complaint are assumed to be true. *In re Navarre Corp. Sec. Litig.*, 299 F.3d at 738.

Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions that are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. *See Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989). To avoid dismissal under Rule 12(b)(6), a complaint must allege facts sufficient to state a claim as a matter of law and

may not merely state legal conclusions. *See Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must contain enough facts to state a claim for relief that is "plausible on its face," and a claim has facial plausibility only when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a "probability requirement," but it calls for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678. Although a pro se litigant is held to "less stringent standards than formal pleadings drafted by lawyers," the litigant is not excused from the requirement that a complaint give the defendant fair notice of the claim and the factual allegations on which it rests. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* (internal citation omitted). "The pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal citations omitted). "[A] complaint [cannot] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

### III. CONCLUSIONS OF LAW

Defendants ask the Court to dismiss Wickner's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 40. Specifically, Defendants argue: (1) the Amended Complaint fails to allege plausible facts that Defendants Bender, Cherro, and Laine's use of force was objectively unreasonable and, thus, excessive; (2) the Amended Complaint fails to allege facts

to support a finding that Wickner had an objectively severe medical need that Defendants Dreher, Furey, and Rosen knew of, but deliberately disregarded; (3) Defendants are entitled to qualified immunity; and (4) Wickner fails to state a claim for punitive damages. *Id.*. Wickner responds that he "has adequately pled that Defendants knew of but disregarded a substantial risk to his health and safety when they allegedly sprayed him, chased him, chocked him, punched him, and refused to provide him with care." ECF No. 46 at 6. Further, Wickner claims that he has properly alleged that Defendants use of force was objectively unreasonable, the pain inflicted was wanton and unnecessary, and that Defendants had reasonable alternatives to the use of force. *Id.* at 5–6.

### 1. Excessive Force

Wickner's Amended Complaint alleges that Bender, Cherro, and Laine violated Wickner's rights under the due process clause of the Fourteenth Amendment by using unnecessary and excessive force against him. ECF No. 39 at 4.

The due process clause of the Fourteenth Amendment protects pretrial detainees from the use of excessive force that amounts to punishment. *Kinglsey v. Hendrickson*, 123 S. Ct. 2466, 2474 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). These same protections are extended to civilly committed persons. *See Crow v. Montgomery*, 403 F.3d 598, 601 (8th Cir. 2005). To prevail on a claim for excessive force, the plaintiff must show "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 123 S. Ct. at 2473. "[O]bjective reasonableness turn on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham*, 490 U.S. at 396)). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* In assessing the reasonableness or unreasonableness of the force used, the court may consider "the relationship between the need for the use of force and the amount of force

6

used; the extent of the plaintiff's injuries; any effort made by the officer to temper or to limit the amount of force; and whether the plaintiff was actively resisting." *Id.* However, these factors are only illustrative, and the court may consider other factors. *See id.*

Wickner alleges that Defendants Bender, Cherro, and Laine, without warning, sprayed excessive amounts of chemical irritants in his face. ECD No. 39 at 3. Wickner claims that they chased him around the unit continuing to spray him with the chemical irritant, and closed his cell door so he could not return to his cell. *Id.* According to Wickner, he was choked until he could not breathe, and punched in the left hip, when he was not resisting. *Id.* Taking Wickner's allegations as true, and affording all inferences in his favor, the Court concludes that Wickner has alleged enough plausible facts that Defendants Bender, Cherro, and Laine did not act objectively reasonable, and that the force used against Wickner was excessive in light of the circumstances.

### 2. Deliberate Indifference to a Serious Medical Need

Wickner's Amended Complaint claims that Defendants Dreher, Furey, and Rosen violated his Fourteenth Amendment rights by their deliberate indifference to his serious medical need when they failed to properly decontaminate him. *Id.*

The court applies an identical deliberate-indifference standard to civilly-committed persons, as that applied to conditions-of-confinement claims made by convicts. *See Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012) (citing *Crow v. Montgomery*, 403 F.3d 598, 601 (8th Cir. 2005)). The courts inquiry involves both an objective and subjective determination. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). To previal, the plaintiff must allege that (1) they suffered an objectively serious medical need, and (2) that the defendants knew of but deliberately disregarded those needs. *Id.* (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997))."[F]ailure to treat a

7

medical condition does not consistute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Dulany*, 132 F.3d at 1239. "Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs." *Id.*

Wickner alleges that after he was sprayed in the face with excessive amounts of chemical irritants by Defendants Bender, Cherro, and Laine, causing him to suffer a burning sensation that lasted for approximately four to five hours. ECF No. 39 at 3. He also claims that he had ringing in his ears, and ongoing headaches as a result of being choked by Defendant Laine. *Id.* The Amended Complaint alleges that Wickner was assessed by the facilities nurse and was given pain medications. *Id.* Additionally, Wickner claims that Defendants Dreher and Furey did not properly decontaminate, placed him under the shower for only ten seconds, and placed him in a cell with nothing to clean off the chemical irritants. *Id.* Wickner alleges that he informed Defendant Rosen that the chemical irritants were still burning him, and that he wanted to return to the decontamination area and be put on the list to see the Hospital Review Board. *Id.* According to Wickner, Defendant Rosen told him that he could not let him take a shower until the first 24 hours of placement period had expired, and that "he would just have to bear it out until the burning sensations went away." *Id.*

As stated above, in considering Defendants' motion to dismiss, the Court must assume all the facts alleged in Wickner's Amended Complaint as true, and afford all inferences in his favor. *See Conley v. Gibson*, 355 U.S. 41, 45–46 (1975). The Court must decide not whether Wickner will ultimately prevail, but whether the Amended Complaint as a whole is "sufficient to cross the federal

8

court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). Because "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable, and 'that a recovery is very remove and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). That is because a motion to dismiss is different from a motion for summary judgment, where the Court is are tasked with determining whether there is a genuine issue of material fact. *Compare* Fed. R. Civ. P. 12(b)(6), *with* Fed. R. Civ. P. 56(a); *see also Buck v. F.D.I.C.*, 75 F.3d 1285, 1288 n.3 (8th Cir. 1996) ("The standards for dismissing a complaint under Rule 12(b)(6) and the standards for granting summary judgment are substantially different."). A court should not dismiss a complaint unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46.

While Wickner's allegations may not survive a motion for summary judgment, at this stage in the proceedings, taking all of Wickner's allegations as true, and drawing all inferences in his favor, the Court finds that Wickner has alleged sufficient facts that Defendants Dreher, Furey, and Rosen knew of, but deliberately disregarded his serious medical need.

### 3. Qualified Immunity

Defendants also argue they are entitled to qualified immunity. *See* ECF No. 41.[2] Specifically, Defendants Bender, Cherro, and Laine argue that they are entitled to qualified immunity on Wickner's claim of excessive force, and Defendants Dreher, Furey, and Rosen assert qualified immunity on Wickner's claim of deliberate indifference to serious medical needs. *Id.* This Court disagrees.

"Under the doctrine of qualified immunity, a court must dismiss a complaint against a

---

[2] Defendants are being sued only in their individual capacity.

9

government official in his individual capacity [if that complaint] fails to state a claim for violation of 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hager v. Ark. Dept. of Health*, 735 F. 3d 1009, 1013 (8th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining whether to grant a motion to dismiss on the basis of qualified immunity, the "court considers whether the plaintiff has stated a plausible claim for violation of a constitutional right and whether the right was clearly established at the time of the alleged infraction." *Id.* "[D]efendants must show that they are entitled to qualified immunity on the face of the complaint." *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005).

"For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Chambers v. Pennycook*, 641 F. 3d 898, 908 (8th Cir. 2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (quotations omitted)). "A plaintiff need not show that the very action in question had previously been held unlawful, but he must establish that the unlawfulness was apparent in light of preexisting laws." *Id.*

Assuming, without deciding, that Wickner's excessive force claim, in the context of qualified immunity, should be evaluated under the conscious-shocking standard, we find that Defendants Bender, Cherro, and Laine are not entitled to qualified immunity. *See* ECF No. 20 (citing *Hall v. Ramsey Cnty*, 801 F.3d 912, 917 n.3 (8th Cir. 2015)) (for the proposition that any constitutional right afforded to a plaintiff under *Kingsley*, could not be said to be 'clearly established' before its publication.).

To satisfy the conscious-shocking standard, "a government official's conduct must be so egregious, so outrageous, that it may fairly be said to shock the contemporary conscious." *Id.* at

10

917–18 (quoting *Cnty of Sacramento v. Lewis*, 523 U.S. 833, 847–48 n.8 (1998)). Wickner alleges that Defendants Bender, Cherro, and Laine not only sprayed excessive amounts of irritants in his face, but continued to chase him around the unit not allowing him to return to a cell, and to physically assault him. *See* ECF No. 39. Based on these facts, and reading the Amended Complaint as a whole, we find that Wickner has sufficiently alleged facts that would plausibly support a finding that Defendants' Bender, Cherro, and Laine's conduct was so outrageous that it shocked the contemporary conscious. Accordingly, Defendants Bender, Cherro, and Laine are not entitled qualified immunity.

Defendants Dreher, Furey, and Rosen, similarly argue they are entitled to qualified immunity on Wickner's claim of deliberate indifference to a serious medical need. *See* ECF No. 41 at 24. As stated above, Wickner has alleged sufficient facts that would plausibly support a finding that Defendants Dreher, Furey, and Rosen violated his Fourteenth Amendment rights by deliberately disregarding Wickner's objectively serious medical needs. *See supra*. Thus, Defendants Dreher, Furey, and Rosen fail to meet their burden in proving that they are entitled to qualified immunity on the face of the Amended Complaint.

### 4. Punitive Damages

A plaintiff is entitled to an award of punitive damages under 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Schaub v. Vonwald*, 638 F.3d 905, 922–23 (8th Cir. 2011) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). "Punitive damages punishes a defendant for outrageous, intentional, or malicious conduct, and deter[s] similar conduct in the future. It is a question of fact whether a defendant's conduct was motivated by an evil motive or involves reckless indifference to the federally protected rights of others." *Id.* (citations omitted).

11

Construing Wickner's allegations liberally, and assuming all facts alleged in his Amended Complaint are true, the Court finds that Wickner has alleged sufficient facts to proceed with his claim for punitive damages.

## IV. RECOMMENDATION

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' motion to dismiss Wickner's Amended Complaint (ECF No. 40) be **DENIED**.

DATED: July 19, 2018                                *s/Franklin L. Noel*
                                                                             FRANKLIN L. NOEL
                                                                             United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **August 2, 2018**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.